1   THOMAS P. O'BRIEN
    United States Attorney
2   CHRISTINE C. EWELL
    Assistant United States Attorney
3   Chief, Criminal Division
    JEFF P. MITCHELL (Cal. State Bar No.: 236225)
4   Assistant United States Attorney
    Domestic Security and Immigration Crimes Section
5        1300 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-0698
7        Facsimile: (213) 894-6436
         E-mail: jeff.mitchell@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13

    UNITED STATES OF AMERICA,        )  CR No. 08-00295-GHK
14                                    )  Amended
                   Plaintiff,         )  PLEA AGREEMENT FOR DEFENDANT
15                                    )  FRANCISCO ANDRES-FRANCISCO
                   v.                 )
16                                    )
    FRANCISCO ANDRES-FRANCISCO        )
17     aka "Chico,"                   )
    FRANCISCO ANDRES-PEDRO,           )
18     aka "Samuel Lopez,"            )
    FRANCISCO PEDRO-FRANCISCO,        )
19  ELVIRA BARTOLO-SEBASTIAN,         )
    JUANA DOMINGO JUAN,               )
20     aka "Margarita Elizabeth       )
       Francisco,"                    )
21  ANGEL GONZALEZ-PELICO,            )
       aka "Juan Ramos Gonzalez,"     )
22  GILBERTO FRANCISCO-LORENZO,       )
       aka "Zorro,"                   )
23     aka "Juan Francisco            )
       Delgado,"                      )
24  JUAN JIMENEZ-PASCUAL,             )
    ISAIAS VASQUEZ-MENDOZA,           )
25     aka "Escorpin,"                )
    HENRY RODRIGUEZ-SANCHEZ,          )
26  ANIBAL FRANCISCO, and             )
    LUIS LOPEZ-MONCHO,                )
27     aka "Luis Castaneda,"          )
       aka "Daniel Juan-Pascual,"     )
28                                    )
                   Defendants.        )

1      1.   This constitutes the plea agreement between FRANCISCO
2  ANDRES-FRANCISCO ("defendant") and the United States Attorney's
3  Office for the Central District of California ("the USAO") in the
4  above-captioned case.  This agreement is limited to the USAO and
5  cannot bind any other federal, state or local prosecuting,
6  administrative or regulatory authorities.

7                              PLEA

8      2.   Defendant agrees to plead guilty to count one
9  of the indictment in <u>United States v. Francisco Andres-Francisco</u>
10 <u>et. al.</u>, CR No. 08-00295-GHK.

11                    NATURE OF THE OFFENSE

12      3.   In order for defendant to be guilty of the single count
13 indictment which charges a violation of Title 8, United States
14 Code, Section 1324(a)(1)(A)(v)(I), the following must be true:
15 (1) beginning on an unknown date and continuing until on or about
16 February 27, 2008, defendant agreed with one or more persons to
17 knowingly conceal, harbor, or shield from detection illegal
18 aliens, or to transport or move illegal aliens within the United
19 States; and (2) defendant became a member of the conspiracy
20 knowing of its object and intending to help accomplish it.
21 Defendant admits that defendant is, in fact, guilty of this
22 offense as described in the indictment.

23                          PENALTIES

24      4.   The statutory maximum sentence that the Court can impose
25 for a violation of Title 8, United States Code, Section
26 1324(a)(1)(A)(V)(I), is: 10 years imprisonment; a three-year
27 period of supervised release; a fine of $250,000 or twice the
28

                                2

1 gross gain or gross loss resulting from the offense, whichever is
2 greatest; and a mandatory special assessment of $100.

3       5.   Supervised release is a period of time following
4 imprisonment during which defendant will be subject to various
5 restrictions and requirements.  Defendant understands that if
6 defendant violates one or more of the conditions of any
7 supervised release imposed, defendant may be returned to prison
8 for all or part of the term of supervised release, which could
9 result in defendant serving a total term of imprisonment greater
10 than the statutory maximum stated above.

11       6.   Defendant also understands that, by pleading guilty,
12 defendant may be giving up valuable government benefits and
13 valuable civic rights, such as the right to vote, the right to
14 possess a firearm, the right to hold office, and the right to
15 serve on a jury.

16       7.   Defendant further understands that the conviction in
17 this case may subject defendant to various collateral
18 consequences, including but not limited to deportation,
19 revocation of probation, parole, or supervised release in another
20 case, and suspension or revocation of a professional license.
21 Defendant understands that unanticipated collateral consequences
22 will not serve as grounds to withdraw defendant's guilty plea.

23                         FACTUAL BASIS

24       8.   Defendant and the USAO agree and stipulate to the
25 statement of facts provided below.  This statement of facts is
26 sufficient to support a plea of guilty to the charge described in
27 this agreement and to establish the sentencing guideline factors
28 set forth in paragraph 11 below.  It is not meant to be a

                              3

1  complete recitation of all facts relevant to the underlying

2  criminal conduct or all facts known to either party that relate

3  to that conduct.

4         Beginning on a date unknown, and continuing to at least

5  February 27, 2008, in Los Angeles County, within the Central

6  District of California, and elsewhere, defendant conspired and

7  agreed with Francisco Andres-Pedro, Francisco Pedro-Francisco,

8  Elvira Bartolo-Sebastian, Juana Domingo-Juan, Angel

9  Gonzalez-Pelico, Gilberto Francisco-Lorenzo, Juan

10  Jimenez-Pascual, Isaias Vasquez-Mendoza, Henry Rodriguez-Sanchez,

11  Anibal Francisco, Luis Lopez-Moncho, and others, to (1) transport

12  or move one or more aliens within the United States for

13  commercial advantage and private financial gain, knowing and in

14  reckless disregard of the fact that each alien had unlawfully

15  come to, entered, or remained in the United States; and (2)

16  conceal, harbor, or shield from detection one or more aliens in

17  the United States for the purpose of commercial advantage and

18  private financial gain, knowing and in reckless disregard of the

19  fact that each alien had unlawfully come to, entered, or remained

20  in the United States.

21         Defendant would direct and oversee the extensive alien

22  transporting and harboring activities by making arrangements with

23  his co-conspirators to transport illegal aliens unlawfully

24  smuggled into the United States from Mexico, Central America, and

25  South America from "drop houses," i.e., houses or similar

26  dwellings where the smuggled aliens would be kept and hidden from

27  law enforcement authorities while in transit, in the Phoenix,

28  Arizona, vicinity to drop houses in the Los Angeles, California,

4

1  vicinity.

2      Defendant and his co-conspirators maintained drop houses in

3  and around Los Angeles, California, within the Central District

4  of California.  On at least 24 separate instances between January

5  17, 2005, and May 4, 2005, defendant and his co-conspirators

6  harbored and concealed at least 512 smuggled aliens in such drop

7  houses.

8      Defendant recruited and hired drivers and provided vehicles

9  to transport smuggled illegal aliens from the drop houses in the

10 Los Angeles, California, vicinity to their final destinations

11 across the United States.

12     Defendant and his co-conspirators would arrange for the

13 smuggled illegal aliens and/or "sponsors," i.e., friends,

14 employers, or family members who pay for the alien to be

15 smuggled, to pay smuggling and transportation fees while the

16 smuggled illegal aliens were concealed in drop houses in the Los

17 Angeles, California vicinity, and arranged for such fees to be

18 directly deposited into bank accounts owned and controlled by

19 defendant.

20     In carrying out this conspiracy, defendant, the leader of

21 the organization, and his co-conspirators, committed, or caused

22 to be committed, the following acts, among others:

23     a) On or about July 8, 2004, defendant and his co-

24 conspirators harbored and concealed illegal alien Raquel L. in a

25 drop house in Los Angeles, California.  On or about July 8, 2004,

26 defendant and his co-conspirators arranged for the purchase of a

27 plane ticket to Nashville, Tennessee, for Raquel L.

28     b) On or about April 4, 2005, defendant's

1 co-conspirators instructed Jose A. to deposit $1,180 into
2 defendant's bank account to pay for the smuggling and
3 transportation fees for Jose A.'s brother, Juan C, an illegal
4 alien.

5       c) On or about April 8, 2005, at the request of
6 defendant's co-conspirators, Nelson V. deposited $3,734 into
7 defendant's bank account to pay for the smuggling and
8 transportation fees for his brother, Mario V., an illegal alien.
9 On or about April 16, 2005, defendant and his co-conspirators
10 purchased a plane ticket to Boston, Massachusetts, for Mario V.
11 and transported Mario V. to the airport.

12       d) On or about April 8, 2005, defendant and his co-
13 conspirators instructed Jorge M. to deposit $2,300 into
14 defendant's bank account to pay for the smuggling and
15 transportation fees for his uncle, Juan P., an illegal alien. On
16 or about April 8, 2005, defendant and his co-conspirators
17 arranged for the purchase of a plane ticket to Philadelphia,
18 Pennsylvania, for Juan P. and transported Juan P. to the airport.

19       e) On or about May 4, 2005, defendant and other co-
20 conspirators harbored and concealed approximately 88 illegal
21 aliens in a house located on 59th Street in Los Angeles,
22 California.

23       f) On or about August 4, 2005, defendant provided his
24 1998 Chevrolet Astrovan, California license plate number 5L1R156,
25 to co-defendant Angel Gonzalez-Pelico in order to transport
26 illegal aliens from Los Angeles, California, to various cities
27 across the United States. On or about August 4, 2005, co-
28 defendant Gonzalez transported nine illegal aliens from Los

1 Angeles, California, to Dagget, California, in defendant's
2 Chevrolet Astrovan.

3        g) On or about January 4, 2008, defendant transported
4 approximately 10 illegal aliens in his blue Toyota Sienna
5 minivan, California license plate number 5ZNR099, from Los
6 Angeles, California, to Centre County, Pennsylvania.

7        h) In furtherance of the conspiracy, on or about July
8 5, 2007, while driving 10 illegal aliens in co-defendant
9 Bartolo's Toyota Sienna minivan that was registered to
10 defendant's residence on East 24th Street, Los Angeles, CA, co-
11 defendant Jimenez rolled the minivan into the median causing co-
12 defendant Jimenez and the 10 illegal aliens to be ejected from
13 the minivan, some of whom suffered serious bodily injuries,
14 including, but not limited to, cerebral hemorrhaging.

15        i) On or about February 27, 2008, defendant
16 possessed in his "San Francisco 99 Cent Store" in Los Angeles,
17 California, approximately 12 alien smuggling ledgers ("pollo
18 books"), documenting the harboring and transporting of 4,058
19 illegal aliens, and at least 20 different corresponding drivers
20 who were hired to transport the aliens.

21        j) On or about February 27, 2008, defendant possessed
22 in his residential home on East 24th Street, Los Angeles,
23 California, approximately four pollo books, documenting the
24 harboring and transporting of over 1,600 illegal aliens.

25                  WAIVER OF CONSTITUTIONAL RIGHTS

26    9.  By pleading guilty, defendant gives up the following
27 rights:

28        a) The right to persist in a plea of not guilty.

7

1    b) The right to a speedy and public trial by jury.

2    c) The right to the assistance of legal counsel at

3 trial, including the right to have the Court appoint counsel for

4 defendant for the purpose of representation at trial.  (In this

5 regard, defendant understands that, despite his plea of guilty,

6 he retains the right to be represented by counsel -- and, if

7 necessary, to have the court appoint counsel if defendant cannot

8 afford counsel -- at every other stage of the proceeding.)

9    d) The right to be presumed innocent and to have the

10 burden of proof placed on the government to prove defendant

11 guilty beyond a reasonable doubt.

12    e) The right to confront and cross-examine witnesses

13 against defendant.

14    f) The right, if defendant wished, to testify on

15 defendant's own behalf and present evidence in opposition to the

16 charges, including the right to call witnesses and to subpoena

17 those witnesses to testify.

18    g) The right not to be compelled to testify, and, if

19 defendant chose not to testify or present evidence, to have that

20 choice not be used against defendant.

21    By pleading guilty, defendant also gives up any and all

22 rights to pursue any affirmative defenses, Fourth Amendment or

23 Fifth Amendment claims, and other pretrial motions that have been

24 filed or could be filed.

25                    SENTENCING FACTORS

26    10.  Defendant understands that the Court is required to

27 consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),

28 including the kinds of sentence and sentencing range established

1  under the United States Sentencing Guidelines ("U.S.S.G." or

2  "Sentencing Guidelines"), in determining defendant's sentence.

3  Defendant further understands that the Sentencing Guidelines are

4  advisory only, and that after considering the Sentencing

5  Guidelines and the other § 3553(a) factors, the Court may be free

6  to exercise its discretion to impose any reasonable sentence up

7  to the maximum set by statute for the crime of conviction.

8      11.   Defendant and the USAO agree and stipulate to the

9  following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | _12_ | {U.S.S.G. § 2L1.1(a)(3)] |
| Transporting more than 100 Aliens | : | _+9_ | {U.S.S.G. § 2L1.1(b)(2)(C)] |
| Resulted in Serious Bodily Injury | : | _+4_ | {U.S.S.G. § 2L1.1(b)(7)] |
| Leadership Role | : | _+4_ | {U.S.S.G. § 3B1.1(a)] |
| Acceptance of Responsibility | : | _-3_ | [U.S.S.G. §3E1.1] |
| Total Offense Level | : | _26_ | |

19  The USAO will agree to a downward adjustment for acceptance of

20  responsibility (and, if applicable, move for an additional level

21  under § 3E1.1(b)) only if the conditions set forth in paragraph

22  15 are met.  Subject to paragraph 14, defendant and the USAO

23  agree not to seek, argue, or suggest in any way, either orally or

24  in writing, that any other specific offense characteristics,

25  adjustments or departures, relating to either the applicable

26  Offense Level or the Criminal History Category, be imposed.  If,

27  however, after signing this agreement but prior to sentencing,

28  defendant were to commit an act, or the USAO were to discover a

1  previously undiscovered act committed by defendant prior to
2  signing this agreement, which act, in the judgment of the USAO,
3  constituted obstruction of justice within the meaning of U.S.S.G.
4  § 3C1.1, the USAO would be free to seek the enhancement set forth
5  in that section.  Defendant also understands that defendant's
6  base offense level could be increased if defendant is a career
7  offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  In the event that
8  defendant's offense level is so altered, the parties are not
9  bound by the base offense (or adjusted offense) level stipulated
10 to above.

11      12.  There is no agreement as to defendant's criminal
12 history or criminal history category.

13      13.  Defendant and the USAO also agree and stipulate that,
14 taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-
15 (7), the relevant Sentencing Guidelines effective on April 7,
16 2008, represent a reasonable basis for the Court to determine
17 defendant's sentence in this case, and agree that defendant
18 should be sentenced in accordance with the Sentencing Guidelines.
19 Therefore, subject to paragraph 14, defendant and the USAO agree
20 not to seek, argue, or suggest in any way, either orally or in
21 writing, that the Court (a) not follow the Sentencing Guidelines
22 in imposing sentence; (b) impose a sentence not in accordance
23 with the Sentencing Guidelines; or (c) impose a sentence outside
24 the sentencing range for the total offense level stipulated to
25 above.

26      14.  The stipulations in this agreement do not bind either
27 the United States Probation Office or the Court.  Both defendant
28 and the USAO are free to: (a) supplement the facts by supplying

1  relevant information to the United States Probation Office and

2  the Court, (b) correct any and all factual misstatements relating

3  to the calculation of the sentence, and (c) argue on appeal and

4  collateral review that the Court's Sentencing Guidelines

5  calculations are not error, although each party agrees to

6  maintain its view that the calculations in paragraph 11 are

7  consistent with the facts of this case.

8                          DEFENDANT'S OBLIGATIONS

9        15.  Defendant agrees that he will:

10              a) Plead guilty as set forth in this agreement.

11              b) Not knowingly and willfully fail to abide by all

12  sentencing stipulations contained in this agreement.

13              c) Not knowingly and willfully fail to: (i) appear for

14  all court appearances, (ii) surrender as ordered for service of

15  sentence, (iii) obey all conditions of any bond, and (iv) obey

16  any other ongoing court order in this matter.

17              d) Not commit any crime; however, offenses which would

18  be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are

19  not within the scope of this agreement.

20              e) Not knowingly and willfully fail to be truthful at

21  all times with Pretrial Services, the U.S. Probation Office, and

22  the Court.

23              f) Pay the applicable special assessment at or before

24  the time of sentencing unless defendant lacks the ability to pay

25  and submits a completed financial statement (form OBD-500) to the

26  USAO prior to sentencing.

27  //

28  //

                                11

1              THE USAO'S OBLIGATIONS

2      16.  If defendant complies fully with all defendant's

3  obligations under this agreement, the USAO agrees:

4          a) To abide by all sentencing stipulations contained in

5  this agreement.

6          b) At the time of sentencing, provided that defendant

7  demonstrates an acceptance of responsibility for the offense up

8  to and including the time of sentencing, to recommend a two-level

9  reduction in the applicable sentencing guideline offense level,

10  pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,

11  move for an additional one-level reduction if available under

12  that section.

13          c) Not to seek a sentence of imprisonment above the

14  mid-point of the applicable Sentencing Guidelines range.

15              BREACH OF AGREEMENT

16      17.  If defendant, at any time after the execution of this

17  agreement, knowingly violates or fails to perform any of

18  defendant's agreements or obligations under this agreement ("a

19  breach"), the USAO may declare this agreement breached.  If the

20  USAO declares this agreement breached at any time following its

21  execution, and the Court finds such a breach to have occurred,

22  then: (a) if defendant has previously entered a guilty plea,

23  defendant will not be able to withdraw the guilty plea, and (b)

24  the USAO will be relieved of all of its obligations under this

25  agreement.

26      18.  Following the Court's finding of a knowing and willful

27  breach of this agreement by defendant, should the USAO elect to

28  pursue any charge that was either dismissed or not filed as a

12

1  result of this agreement, then:

2          a) Defendant agrees that any applicable statute of

3  limitations is tolled between the date of defendant's signing of

4  this agreement and the commencement of any such prosecution or

5  action.

6          b) Defendant gives up all defenses based on the statute

7  of limitations, any claim of pre-indictment delay, or any speedy

8  trial claim with respect to any such prosecution, except to the

9  extent that such defenses existed as of the date of defendant's

10  signing this agreement.

11                    LIMITED MUTUAL WAIVER OF APPEAL

12      19.  Defendant gives up the right to appeal any sentence

13  imposed by the Court, and the manner in which the sentence is

14  determined, provided that (a) the sentence is within the

15  statutory maximum specified above and is constitutional, and (b)

16  the Court imposes a sentence within or below the range

17  corresponding to a total offense level of 26, and the applicable

18  criminal history category as determined by the Court.

19  Notwithstanding the foregoing, defendant retains any ability

20  defendant has to appeal the Court's determination of defendant's

21  criminal history category and the conditions of supervised

22  release imposed by the Court, with the exception of the

23  following: conditions set forth in General Orders 318, 01-05,

24  and/or 05-02 of this Court; the drug testing conditions mandated

25  by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug

26  use conditions authorized by 18 U.S.C. § 3563(b)(7).

27      20.  The USAO gives up its right to appeal the sentence,

28  provided that (a) the sentence is within the statutory maximum

1  specified above and is constitutional, and (b) the Court imposes
2  a sentence within or above the range corresponding to a total
3  offense level of 26, and the applicable criminal history category
4  as determined by the Court.

5                          COURT NOT A PARTY

6       21.  The Court is not a party to this agreement and need not
7  accept any of the USAO's sentencing recommendations or the
8  parties' stipulations.  Even if the Court ignores any sentencing
9  recommendation, finds facts or reaches conclusions different from
10 any stipulation, and/or imposes any sentence up to the maximum
11 established by statute, defendant cannot, for that reason,
12 withdraw defendant's guilty plea, and defendant will remain bound
13 to fulfill all defendant's obligations under this agreement.  No
14 one -- not the prosecutor, defendant's attorney, or the Court --
15 can make a binding prediction or promise regarding the sentence
16 defendant will receive, except that it will be within the
17 statutory maximum.

18                      NO ADDITIONAL AGREEMENTS

19      22.  Except as set forth herein, there are no promises,
20 understandings or agreements between the USAO and defendant or
21 defendant's counsel.  Nor may any additional agreement,
22 understanding or condition be entered into unless in a writing
23 signed by all parties or on the record in court.

24          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

25      23.  The parties agree and stipulate that this Agreement
26 will be considered part of the record of defendant's guilty plea
27 hearing as if the entire Agreement had been read into the record
28 of the proceeding.

                                14

1      This agreement is effective upon signature by defendant and

2  an Assistant United States Attorney.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF CALIFORNIA

5
   THOMAS P. O'BRIEN
6  United States Attorney

7  _____          10-23-08
                                               _____
8  JEFF P. MITCHELL                            Date
   Assistant United States Attorney

9

10     I have read this agreement and carefully discussed every

11 part of it with my attorney.  This agreement has been read to me

12 in Spanish, the language I understand best, and I have carefully

13 discussed every part of it with my attorney.  I understand the

14 terms of this agreement, and I voluntarily agree to those terms.

15 My attorney has advised me of my rights, of possible defenses, of

16 the sentencing factors set forth in 18 U.S.C. § 3553(a), of the

17 relevant Sentencing Guidelines provisions, and of the

18 consequences of entering into this agreement.  No promises or

19 inducements have been given to me other than those contained in

20 this agreement.  No one has threatened or forced me in any way to

21 enter into this agreement.  Finally, I am satisfied with the

22 representation of my attorney in this matter.

23

24 _Francisco A Francisco_                      10-17-08
                                               _____
   FRANCISCO ANDRES-FRANCISCO                   Date
25 Defendant

26

27

28

                               15

1    I, *ELEAZAE CARRASCO* *Robela Martinez* am fluent in written and spoken

2  English and ~~Konjobal~~ *SPANISH* languages. I accurately translated this

3  entire agreement from English into ~~Konjobal~~ *SPANISH* to defendant

4  FRANCISCO ANDRES-FRANCISCO on this date. *Oct / 27 /08*

5  *Robela Martinez*

6  *Eleazar Carrasco*      *Oct. 17 '08*

   Interpreter                    Date

7

8     I am Francisco Andres-Francisco's attorney. I have

9  carefully discussed every part of this agreement with my client.

10  Further, I have fully advised my client of his rights, of

11  possible defenses, of the sentencing factors set forth in 18

12  U.S.C. § 3553(a), of the relevant Sentencing Guidelines

13  provisions, and of the consequences of entering into this

14  agreement. To my knowledge, my client's decision to enter into

15  this agreement is an informed and voluntary one.

16

17  *Janet Sherman*              *10-17-08*

   JANET SHERMAN             Date

18  Counsel for Defendant

   Francisco Andres-Francisco

19

20

21

22

23

24

25

26

27

28